# GREGG COMPANY, LTD.

## *v.*

# UTUADO SUGAR COMPANY.

---

San Juan, Equity, No. 898.

AS TO RECEIVERSHIP LIENS AND SALE.

Receivership—Two Objects.

1. In every receivership there is involved, first, the handling and

Gregg Co. v. Utuado Sugar Co.

disposing of the property involved and administrative questions, and, second, determination of the claims which are set up against the property.

Same—Bondholders.

2. In a receivership sale bondholders will be allowed to use their bonds in payment of their bid, provided enough cash is supplied to take care of claims given priority.

Same—Property not Mortgaged.

3. If there is property not covered by a mortgage, it may be ordered sold at the same time as the mortgaged property, but its proceeds in cash held as a separate fund.

Claims—Priorities.

4. In the adjudication of claims against a fund in court, there must be determined not only the correctness of the claim, but whether it has a lien, and also the relative priorities of the different liens declared.

Bonds—Sale of Collateral.

5. The court will grant an order permitting persons holding bonds as collateral to dispose of them.

Receivership—Early Sale.

6. In the case of such property as a sugar central, which goes by crop and grinding seasons, a sale shall be so regulated, if possible, that the purchasers can get ready for the next season.

Opinion filed July 20, 1914.

*Messrs. Alvarez, Nava, & Dominguez* for Luis Felipe Yglesias.

*Mr. Chas. Hartzell* for bondholders.

HAMILTON, Judge, delivered the following opinion:

This cause comes on to be heard in two aspects. In the

Gregg Co. v. Utuado Sugar Co.

first place there is a petition of one Yglesias claiming a prefer-
ence on account of a balance of $15,371.98 remaining unpaid
upon money advanced to the receiver under an order of this
court authorizing the receiver to borrow money in certain ways
set out in the order. It also comes up on an application of
practically all parties holding interests in this litigation except
Mr. Yglesias. The complainant, however, does not join in the
application. The petition of each party is opposed by the
other party to this proceeding. Practically everybody being
represented, the question of notice does not come up. The
complainant must be presumed to be in court because the case
has been regularly set and it is one of the two original parties,
the defendant joining in the application.

1. In every receivership there are two things to be con-
sidered. In the first place there is the property itself that is
the subject of the receivership, the handling and the disposition
of the property, the corpus of the estate. In the second place,
the claims that are to be fastened upon that property. These
two are entirely distinct and can be handled separately. A
good illustration, in fact the best of all illustrations, is found
in admiralty proceedings, to which equity proceedings are more
or less analogous. In admiralty a ship is seized upon certain
process, disposed of by sale, and the proceeds remain in court.
The claims and their priorities are established by an entirely
different proceeding from the sale itself, that is to say, by
different steps from the sale itself, although in the same suit.
The two have no necessary connection with each other, except
that the court must have jurisdiction of the property in order
to be able to sell it, and must have jurisdiction of the claims
in order to settle them. The proposition made by the creditors,

### Gregg Co. v. Utuado Sugar Co.

except Mr. Yglesias, in this case, looks to a separation of those two things, the property and the settlement of the claims, and, by analogy to admiralty procedure, in fact one which is found in other equity proceedings, there is no objection to this, provided, of course, the details can be worked out so as to do justice to all parties. Now can that be done in this case?

2. In the first place take the question of the property. The proposition is double as to the property. (a) That the receiver be continued, upon, however, a less expense than heretofore. He is to continue until there is some final disposition of the property. That would be proper in any case. (b) It is proposed that the bondholders when ascertained—so far the court does not know who the bondholders are—are to have the right to bid for that property, if they may see fit, but that they shall be compelled as a part of the order in this case to take care of any claims to which the court may decree priority. As to what they might be it is impossible to tell in advance. It is argued that that condition will make it impracticable for the bondholders to bid; that they will not want to bid under such circumstances; that they will not know what they are buying or how much money they will have to put up. The court, however, thinks that the experiment should be tried. The bondholders applied for this order themselves, and, if they did at all, they will have to conform to that provision. If they do not bid at all, if there is no substantial bid, the court would not confirm the sale, or if there is a cash bid entirely disproportionate, the court would not confirm the sale. The sale would have to be subject to confirmation by the court and that would have to be based upon a reasonably adequate bid. So the court thinks there would be no impropriety in pursuing this course.

Gregg Co. v. Utuado Sugar Co.

3. The second lot that is to be sold is the property of the company which is not covered by the mortgage. The court does not know how much this is, but whatever it is, of course, can be found out and will be found out. That would be sold for cash, which would be deposited in court subject to application to whatever claims it should go to. This seems to be reasonable. So that the court does not see that there is anything impractical in ordering a sale at this time. If it does not materialize, we are no worse off than if we made no order at all at this time. If it does materialize, all parties will be in much better condition. So the court is disposed to make the order. So much for the handling of the property of the receivership.

4. The other great branch of the case would be the settlement of the liens to be paid out of the proceeds. It is proposed that all matters not already settled in the way of claims be referred to the standing master for adjudication. This would cover, amongst other things, the claim of Mr. Yglesias, and that order will be made. The second thing to be referred to the master, after he has found what the liens should be, would be to ascertain what the priorities are among those liens. That is an entirely distinct result. Declaring that a claim has a lien is by no means saying that the receiver must pay it at once. There must further be a settlement of its right relative to other claims which also may have preferences. In a case in this court, the Borinquen Case, there was a reference to one master to ascertain liens, and a reference to another master to ascertain preferences among those liens, and, while that also will be referred to the master, it is a separate proposition. He is to ascertain in the first place what the liens are so far as have not been determined, and, in the second place, the priori-

ties between those liens so far as he has determined the liens
or so far as they have been determined heretofore. That
would be a second branch of his hearings and report. A third
matter which will here be referred to the master is to ascertain
who are the bondholders, who hold the bonds. That may be a
very easy matter, but at the same time the court would require
something more than simply a petition by people who say that
they are the bondholders before it can recognize them as bond-
holders. This will have to be done, and it no doubt can be
very easily done.

5. It was asked incidentally that these bondholders be per-
mitted to sell their collateral holdings. This is not objected
to, and it would seem as if it is only right. If a man holds
a bond as collateral to a debt, he certainly holds it with the
right of selling it; so that that will be permitted. It may be
remarked incidentally that, so far as concerns Mr. Yglesias, the
court will see that he is fully protected. It does not see that
an order providing for the sale at this time would injure him
in the slightest. The sale will not be confirmed unless there is
enough money paid into court to pay what seem to be the
proper liens upon this property, and amongst those would be
that of Mr. Yglesias if he proves that he has such a lien. Of
course, the court does not pass on that. The master will also
investigate and determine what right, if any, Mr. Yglesias has
in the growing canes, and the best method of enforcing that
right, and further, if Mr. Yglesias desires to take any steps
towards cultivating the cane, he is permitted to do so.

6. It seems important to have the property of a sugar cen-
tral put in some shape for handling. The receiver's duties
are simply to take care of it under present circumstances, and

there will be needed planting, there will be needed care, and there will be needed all sorts of things before the 1st of January. For that reason it looks to the court as if there should be some expedition in the sale of the property, and if the worst happens, that is to say, if there is no proper bid, there is certainly no harm done. We will have made an effort to put the thing in condition for its best handling for the interest of all concerned. A decree will be entered in conformity with this opinion.